UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUDY ANN EMMENDORFER,

      Plaintiff                               Civil Action No. 16-12854

v.

COMMISSIONER OF SOCIAL             HON. R. STEVEN WHALEN
SECURITY,                            U.S. Magistrate Judge

      Defendant.
_____/

## OPINION AND ORDER

Plaintiff Judy Ann Emmendorfer ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner ("Defendant") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. For the reasons discussed below, Defendant's Motion for Summary Judgment [Docket #14] is DENIED and Plaintiff's Motion for Summary Judgment [Docket #12] is GRANTED to the extent that the case shall be remanded to the administrative level for further proceedings consistent with this opinion.

## I. PROCEDURAL HISTORY

On October 1, 2012, Plaintiff filed an application for DIB alleging disability as of May 1, 2011 (Tr. 208-209). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on November 5, 2013 before Administrative Law Judge ("ALJ") Paul W. Jones (Tr. 52). On January 3, 2014, ALJ Jones determined that Plaintiff was not disabled (Tr. 97-111). On March 3, 2015, the Appeals Council vacated the January 3, 2014 decision, remanding the case to the ALJ on the basis that the ALJ did not explain his reasons

for rejecting a treating physician's opinion that Plaintiff was limited to occasional manipulative activity (Tr. 112).

On June 10, 2015, ALJ Jones conducted a second hearing (Tr. 33). Plaintiff, represented by counsel, testified, as did Vocational Expert Georgette Gunther (Tr. 37-51). On June 25, 2015, ALJ Jones issued a partially favorable decision, finding that due to Plaintiff's limitation to exertionally light work, she was disabled as of December 29, 2014 due to a change in Plaintiff's age category to "advanced age" (Tr. 19-28); Medical-Vocational Rule 202.06. On June 9, 2016, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the final decision in this Court on August 3, 2016. *Docket #1*.

## II.  BACKGROUND FACTS

Plaintiff, born December 30, 1959, was 55 when ALJ Jones issued his decision (Tr. 28, 208). She completed 12th grade and worked as a cashier at a party store (Tr. 246). She alleges disability resulting from rheumatoid arthritis, a back injury, depression, insomnia, Carpal Tunnel Syndrome ("CTS"), and asthma (Tr. 245).

### A.      Plaintiff's Testimony

Plaintiff offered the following testimony:

### 1.  November 5, 2013

She was married and lived in a single-family home with her husband (Tr. 55). Following her husband's retirement, they bought a farm approximately 14 miles from their home which her husband ran for profit (Tr. 57). At their own home, they had 20 pigs, two dogs, one cat, and around 50 chickens at the farm but she did not help her husband take of them (Tr. 68). Her only job was collecting eggs (Tr. 68).

For the past two years, Plaintiff was unable to help her husband with the farming,

noting that she used to be able to lift up a wagon tailgate and drive a truck (Tr. 57). Plaintiff worked 12 hours a week at a party store as a cashier (Tr. 58). She received steroid injections for the upper extremity conditions (Tr. 70). Her work in a previous cashiering position required her to lift up to 20 pounds (Tr. 63). She also worked for 12 months in 2002 babysitting her grandchild (Tr. 65). She was unable to work more hours due to rheumatoid arthritis, but had recently begun watching her grandchildren again for approximately 19 hours a week (Tr. 58, 68). She was able to read, write, and perform calculations (Tr. 60). She stood 5' 8" and weighed 260 pounds (Tr. 61).

Plaintiff smoked around five cigarettes a day (Tr. 72). She had received treatment from the same physician for the past 33 years (Tr. 73). She was able to climb a flight of stairs two to three times a day (Tr. 74). She was unable to kneel (Tr. 75). She experienced problems peeling potatoes due to arthritis of the hands (Tr. 75). She required a 10-minute rest after experiencing locked finger joints (Tr. 77). Although she held a job as a cashier, she was required to leave her shift two hours early at least twice a month due to hand problems (Tr. 77). She experienced constant foot pain and her most comfortable position was lying flat on her back (Tr. 77). Due to fatigue, she reclined two or three times a day for at least half an hour (Tr. 78). She experienced mild relief from pain medication (Tr. 78). Steroid injections improved her condition for around one week (Tr. 78). She was capable of lifting up to 25 pounds (Tr. 78). Her husband did 75 percent of the work at the times she was babysitting her grandchildren (Tr. 79). On a "bad" day, Plaintiff stayed in her room all day, adding that she experienced such days around four times a month (Tr. 80).

### 2. June 10, 2015

Plaintiff had only worked two days since the previous hearing due to gall bladder surgery (Tr. 37-38). Her hand and wrist condition had worsened (Tr. 46). She experienced

problems "grabbing" items and buttoning clothes and was unable to lift more than 10 pounds (Tr. 47, 49). She also experienced increased foot, elbow, and knee pain (Tr. 47). In addition to the gall bladder problems, she had experienced a kidney infection (Tr. 48).

### B. Medical Evidence

### 1. Records Related to Plaintiff's Treatment

March, 2011 records by Larry G. Alton, D.O. state that Plaintiff continued to smoke (Tr. 434). Plaintiff reported leg swelling (Tr. 384). A lower extremity study showed mild bilateral obstructive atherosclerosis ( Tr. 433). A May, 2011 chest x-ray was unremarkable (Tr. 406). In August, 2011, Dr. Alton prescribed a nebulizer machine for asthma (Tr. 420). October, 2011 treating records note a diagnosis of generalized osteoarthritis centered in the bilateral feet (Tr. 319). Dianne Trudell, M.D. noted heel spurs and "a borderline positive rheumatoid factor" (Tr. 319). Plaintiff reported no improvement from the use of Methotrexate (Tr. 320). The same month, Dr. Alton determined that Plaintiff required hearing aids (Tr. 417). Dr. Alton's notes from the following month note Plaintiff's report of ongoing back pain (Tr. 368).

January, 2012 orthopedic records by Susan Mosier-LaClair, M.D. note Plaintiff's report of year-long bilateral foot pain (Tr. 286-289). Dr. Mosier-LaClair noted full strength and Plaintiff's report that arthritis of the big toes did not bother her (Tr. 286). Plaintiff reported joint tenderness in both feet at the second through fifth toe joints (Metatarsalgia) (Tr. 286). Imaging studies showed bilateral mid-foot arthritis (Tr. 287). Dr. Mosier-LaClair recommended metatarsal pads (Tr. 287). Dr. Alton's records from the same month state that Plaintiff requested a steroid injection for numbness of the right leg and face (Tr. 365). The following month, Plaintiff sought emergency treatment for chest pain and shortness of breath (Tr. 291). Testing was negative for myocardial infarction (Tr. 291). Plaintiff was advised

to lose weight, stop smoking, and obtain a sleep apnea evaluation (Tr. 291, 363). EMG studies of the lower extremities from the same month showed radiculopathy with ongoing moderate enervation (Tr. 327, 460). The same month, Plaintiff was prescribed Vicodin (Tr. 410). A March, 2012 MRI of the lumbar spine showed a broad-based hernia at L5 with nerve root compression (Tr. 332, 464).

In April, 2012, neurosurgeon Lisa Guyot, M.D. noted Plaintiff's report of level "six" out of "ten" lower back pain (Tr. 342, 451). Dr. Guyot also noted a history of asthma (Tr. 343). Plaintiff demonstrated difficulty with tandem gait and a decreased range of lumbar and cervical spine motion (Tr. 343-344, 452-453). Dr. Guyot's May, 2012 records state that Plaintiff declined a recommendation for surgery and opted for epidural steroid injections instead (Tr. 339, 448). Dr. Alton's August, 2012 records state that Plaintiff requested an emergency arthritis shot (Tr. 358). The following month, she reported that she could "hardly walk" due to foot pain (Tr. 355).

February, 2013 records note that Plaintiff had been diagnosed with rheumatoid arthris 25 years earlier (Tr. 444). April, 2013 treating notes state that lab work was positive for rheumatoid arthritis (Tr. 443). Plaintiff exhibited swollen hands (Tr. 443). A May, 2013 MRI of the right hip showed a "probable" paralabral cyst (Tr. 479). Dr. Alton's notes from the following month state that Plaintiff wanted to continue prednisone (Tr. 478). In August, 2013, Plaintiff reported recent, increased symptoms of rheumatoid arthritis (Tr. 522).

In October, 2013, Dr. Alton completed an assessment of Plaintiff's work-related abilities, finding that she was limited to lifting 20 pounds occasionally and 10 frequently and experienced limitations in pushing and pulling in both the upper and lower extremities, based on x-rays, lab work, and the need for ongoing steroid treatment and other medication (Tr. 481, 658). He precluded all climbing, kneeling, crouching, crawling, and stooping and

limited Plaintiff to frequent balancing (Tr. 481). He noted that the above activities could not be performed for more than two hours a day, adding that "most of them are never" (Tr. 481). He limited Plaintiff to occasional reaching, handling, and fingering, and frequent feeling, noting that his answers were based mostly on his own clinical observations (Tr. 482). He observed that Plaintiff was also hard of hearing and that her work abilities were compromised by both pain and prescribed medication (Tr. 482). He found that Plaintiff's abilities were also limited by the environmental factors of noise, humidity, and hazards, noting a diagnosis of Obstructive Lung Disease (Tr. 483).

In March, 2014, Plaintiff was hospitalized for renal failure (Tr. 527). In July, 2014, Plaintiff was diagnosed with mild gastritis (Tr. 524). In December, 2014, rheumatologist Carlos Diola, M.D. noted Plaintiff's report of "really bad" hand and foot pain (Tr. 486). He observed mild swelling of the wrists but no rheumatoid deformities (Tr. 486). The following month, Ali K. Mohammed, M.D. noted diagnoses of acute renal failure, chronic kidney disease, hypertension, arthritis, and morbid obesity (Tr. 492, 497). In May, 2015, Plaintiff reported continued hand and foot pain (Tr. 494).

## 2. Consultative and Non-Examining Sources

In December, 2012, Muhammad Ahmed, M.D. performed a non-examining review of the treating and consultative records on behalf of the SSA, finding that Plaintiff could lift and carry 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 92). He found that Plaintiff could balance frequently and climb, stoop, kneel, crouch, and crawl on an occasional basis (Tr. 92). He found that Plaintiff should avoid concentrated exposure to extreme cold and airborne hazards (Tr. 93).

## C.   Vocational Expert Testimony (June 10, 2015 Hearing)

VE Georgette Gunther  classified Plaintiff's former work as a cashier/checker as semiskilled and exertionally light (light to medium as performed)[1] (Tr. 39).  The ALJ then posed a set of restrictions to the VE, describing a hypothetical individual of Plaintiff's age, education, and work background:

> [Exertionally] light work. . . who can occasionally stoop, kneel, crouch, and crawl, who can frequently handle and frequently finger bilaterally, who can be exposed frequently to the non-weather-related extremes of cold, who can be exposed frequently to humidity, who can be exposed frequently to fumes, and no other limitation.  Could such a person perform [Plaintiff's] past work? (Tr. 39).

The VE stated that the past work would be unavailable, due to the need for *constant* rather than frequent fingering, but that the above-described individual could perform the light, unskilled work of an interviewer (100,000 positions in the national economy); mail clerk (71,000); and general office clerk (Tr. 231,000) (Tr. 40, 43).  She stated that a reduction in handling and fingering to *occasional* would eliminate all three positions (Tr. 43) but that the individual could perform the jobs of usher (169,000); transportation attendant (31,000); and counter clerk (111,000) (Tr. 45).

---

[1]20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work " lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

**D. The ALJ's Decision (June 25, 2015)**

Citing the medical transcript, ALJ Jones found that Plaintiff experienced the severe impairments of "obesity; lumbar degenerative disc disease; asthma; and rheumatoid arthritis" but that none of the conditions met or medically equaled an impairment found in Part 404 Appendix 1 Subpart P, Appendix No. 1 (Tr. 21-22). He found that the conditions of diabetes, hearing loss, and gastrointestinal disorder were non-severe (Tr. 22). The ALJ determined that Plaintiff retained the Residual Functional Capacity ("RFC") for light work with the following limitations:

> [S]he can only occasionally climb, stoop, kneel, crouch, crawl; frequently balance; frequently handle/finger with her arms; with only frequent exposure to humidity, fumes, and the non-weather-related extremes of cold (Tr. 22).

Citing the VE's testimony, the ALJ found that while Plaintiff was unable to perform her past relevant work as a cashier/checker, between May 1, 2011 and December 29, 2014, she could perform the jobs of interviewer, mail clerk, and office clerk (Tr. 27, 43). However, the ALJ found that Plaintiff's inability to perform more than exertionally light work rendered her disabled as of her 55[2] birthday of December 30, 2014 (Tr. 26).

The ALJ discounted Plaintiff allegations of disability prior to that date, noting that although she was diagnosed with rheumatoid arthritis more than 25 years ago, recent imaging studies were negative for joint deformities (Tr. 23). He cited Plaintiff's report to her treating sources that she experienced foot pain but was able to stand at work for six hours (Tr. 23). He noted that Plaintiff continued "to do rather strenuous activities, including meal

---

[2]

20 C.F.R. part 404, subpart P, App. 2, Rule 202.06 directs a finding of disability for an individual 55 or over (advanced age) who is unable to perform her previous work, does not possess transferrable skills from her previous work, *and* is limited to exertionally light or sedentary, unskilled work.

preparation, washing dishes, doing laundry, and vacuuming" (Tr. 25). He found that Plaintiff was also able to  help her husband take care of 20 pigs, 2 dogs, 1 cat, 50  chickens, and babysit for their grandchildren (Tr. 25).

## III.  STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir.  1985).  Substantial evidence is more than a scintilla but less than a preponderance.   It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.  FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In

evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V. ANALYSIS

Plaintiff makes three arguments for remand. First, she points out that the ALJ miscited Dr. Alton's findings by stating that she could reach, handle, and finger frequently, when in fact, Dr. Alton found that she was limited to those activities on an *occasional* basis. *Plaintiff's Brief,* 7-11, *Docket #12,* Pg ID 714 (*citing* Tr. 26, 481). Second, she argues that the ALJ supported his determination that her claims were not credible was based on a distorted reading of the record. *Id.* at 11-15. She also argues that the ALJ's rejection of Dr. Alton's treating opinion was substantially and procedurally inadequate. *Id.* at 15-17.

Plaintiff's first and second arguments will be considered separately. Her third argument, premised in large part on the ALJ's purportedly distorted reading of the medical evidence, will be addressed in tandem with the other arguments for remand.

However, as threshold matter, the Court addresses the ALJ's comments regarding the March 3, 2015 Appeals Council remand (Tr. 19, 112). In the subsequent decision, the ALJ stated that the remand was "ill-founded" and that he ordered a second hearing at "taxpayer expense" (Tr. 19). Plaintiff, referring to these statements as a "rant," notes that the second

hearing was not at taxpayer expense, but was paid for by the Disability Insurance Trust Fund "set aside for the administration of disability claims and benefits" and is paid for by the "income withholding taxes of wage earners." *Plaintiff's Brief* at 9 (emphasis omitted)(*citing* www.ssa.gov/OACT/progdata/describedi.html)).

While the AJL's gratuitous comments were ill-advised and largely off the mark, Plaintiff's implied claim of bias resulting in reversible error is not well taken. "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display" do not establish bias. *Liteky v. United States*, 510 U.S. 540, 555–556, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994). In response, Defendant notes correctly that "intemperate or inappropriate comments are not grounds for remand unless they establish actual bias against the claimant or otherwise affect the outcome of the proceeding." *Defendant's Brief,* 13, *Docket #14,* Pg ID 743 (*citing Collier v. CSS,* 108 F. App'x 358, 364,2004 WL 1922187, *6 (6ᵗʰ Cir. August 24, 2004)).

Courts "'must begin with the "'presumption that policymakers with decisionmaking power exercise their power with honesty and integrity.'" *Collier,* at 363-364 (*citing Navistar Int'l. Transportation Corp. v. United States Environmental Protection Agency*, 941 F.2d 1339, 1360 (6th Cir.1991)). At the hearing, the ALJ took Plaintiff's testimony as to her recent condition and queried the VE at length as to whether the manipulative limitations would affect the ability to perform the past relevant work. He ultimately determined that Plaintiff was entitled to benefits as of her 55ᵗʰ birthday. Despite the ALJ's irritation with the Appeals Council, Plaintiff has not met her burden to show that his findings were colored by bias such as to create reversible error.[3]

---

[3] While the ALJ's comments do not provide an independent ground for remand, the appearance of impartiality will be better served by remanding this case to a different

### A. The Manipulative Limitations

Notwithstanding the absence of bias, the ALJ's discussion of the manipulative limitations is not a model of clarity.

As discussed above, in December, 2012, non-examining source Dr. Ahmed found the absence of manipulative limitation (Tr. 93). In October, 2013, treating physician Dr. Alton found that Plaintiff was limited to *occasional* reaching, handling, and fingering and frequent feeling (Tr. 482). In contrast to both opinions, the RFC in the June 25, 2015 determination states that Plaintiff was limited to *frequent* handling and fingering, the mid-point between no limitation (constant) as found by Dr. Ahmed activity and occasional as found by Dr. Alton (Tr. 22).

The ALJ's explanation for "splitting the baby" is problematic:

> [Dr. Alton] . . . recorded restrictions to reaching, handling, fingering occasionally and feeling frequently which are consistent with the RFC adopted. I give only partial weight to his restrictions, as only his manipulative restrictions are consistent with the medical record and other evidence as [a] whole (Tr. 26).

Of course, the ALJ's statement that he adopted Dr. Alton's occasional manipulative limitations is wholly erroneous, given that the RFC allows for frequent, not occasional manipulative activity (Tr. 22, 26). The second sentence of the ALJ's rationale is of even greater concern. If Dr. Alton's manipulative findings "are consistent with the record," why are they not included in the RFC? The ALJ's discussion of other portions of Dr. Alton's opinion provides no clarification of the manipulative findings and in fact, contains additional contradictory findings. While the ALJ noted that Dr. Alton found that Plaintiff could stand or walk at least two hours in an eight-hour workday (Tr. 25 *citing* 657), in the next sentence,

ALJ.

he states erroneously that Dr. Alton "gave no . . . standing or walking restrictions" (Tr. 25). Likewise, the ALJ acknowledged that Dr. Alton limited Plaintiff to 20 pounds lifting, but in the next sentence, erroneously states that Dr. Alton failed to provide lifting restrictions (Tr. 25).

Defendant acknowledges the shortcomings in the ALJ's reasoning but notes that even an RFC for occasional rather than frequent manipulative activity would result in a non-disability finding. *Defendant's Brief* at 15. Defendant cites the VE's testimony that if the hypothetical individual were limited to occasional manipulative activity, she would nonetheless be capable of performing a significant range of unskilled, exertionally light work. *Id.* (*citing* Tr. 43, 45). However, the ALJ's misstatements warrant a remand for multiple reasons. First, an ALJ's rationale "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts" including the medical and non-medical evidence. SSR 96–8p, 1996 WL 374184, *2 (July 2, 1996). *Id.* at *7. The analysis must include the non-exertional limitations. 20 C.F.R. § 404.1545. The Ruling, at a minimum, requires the ALJ to "'articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" *Delgado v. CSS*, 30 Fed.Appx. 542, 547–548, 2002 WL 343402, *5 (6th Cir. March 4, 2002)(*citing Bencivengo v. CSS*, 251 F.3d 153, slip op., 4-5 (Table)(3rd Cir. December 19, 2000)(punctuation added)). In this case, the ALJ's rationale appears to have created new inconsistencies rather resolving the old ones.

The same misstatements also undermine treating physician analysis. It is well settled that "[i]f the opinion of the claimant's treating physician is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue*, 573

F.3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v. CSS*, 378

F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2)).  While the ALJ may reject all or

a portion of the treating source's findings, he must supply "good reasons" for doing so.

*Wilson*, at 547; 20 C.F.R. § 404.1527(c)(2)).  Here, the ALJ made multiple misstatements of

Dr. Alton's findings, stating at one point that the physician did not provide an assessment of

the exertional abilities and at another, acknowledging them (Tr. 25).  The ALJ's statement

that the Dr. Alton did not specify walking or standing requirements, when in fact, he found

that Plaintiff could stand/walk at least two hours in an eight-hour workday but not six is

particularly critical, given that the inability to walk approximately six hours a day would limit

her to sedentary work.  *See* SSR 83–10, 1983 WL 31251, *5 (1983)("the primary difference

between sedentary and most light jobs" is that exertionally light work, in contrast to

sedentary work, "requires a good deal of walking or standing."[4]   "Even though the weight

lifted in a particular light job may be very little, a job is in this category when it requires a

good deal of walking or standing." *Id.*   Again, while the ALJ stated that he adopted Dr.

Alton's manipulative limitations, the RFC for frequent manipulative activity does not reflect

either Dr. Alton or the non-examining source's findings (Tr. 26).    The ALJ's rationale,

based on an inaccurate account of the treating opinion, does not constitute "good reasons"

for discounting the treating opinion.

---

[4]

A proper determination of Plaintiff's ability to stand and walk is pertinent to the issue
of whether she was disabled prior to her 55th birthday.  The finding that she was limited to
exertionally sedentary, unskilled work between the ages 50 to 55 ("closely approaching
advanced age") would generally result in a disability finding. 20 C.F.R. part 404, subpart P,
App. 2, Rule 201.14.

'The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases,' particularly in situations where a claimant knows that his physician has deemed him disabled and therefore 'might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.' *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999).

*Wilson, supra*, 378 F.3d at 544. Applicably here, the failure to supply a cogent rationale for the partial rejection of Dr. Alton's opinion mandates a remand for further proceedings.

## B. Plaintiff's Allegations of Limitation

The ALJ's credibility determination is also of concern. The credibility determination, currently guided by SSR 96-7p, describes the process for evaluating symptoms.[5] As a threshold matter, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment ... that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186 at *2 (July 2, 1996). The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record."[6] *Id.*

---

[5]

In March, 2016, SSR 16-3p superceded SSR 96-7p. The newer Ruling eliminates the use of the term "credibility" from SSA policy. SSR 16-3p, 2016 WL 1119029, *1 (Mar. 16, 2016). The Ruling states that "subjective symptom evaluation is not an examination of an individual's character." Instead, ALJs are directed to "more closely follow [the] regulatory language regarding symptom evaluation." See 20 C.F.R. § 404.1529(c)(3), fn 7, *below*. Nonetheless, SSR 96-7p applies to the present determination, decided on August 20, 2015. See *Combs v. CSS*, 459 F.3d 640, 642 (6th Cir. 2006)(*accord* 42 U.S.C. § 405(a))(The Social Security Act "does not generally give the SSA the power to promulgate retroactive regulations").

[6]

In addition to an analysis of the medical evidence, 20 C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination: "(i) . . . daily activities; (ii)

As to the first prong of SSR 96-7p, the objective medical evidence reflects a greater level of limitation than found by the ALJ. Regarding the allegations of lower extremity limitation alone, the objective medical evidence created during the relevant period show that Plaintiff was limited by osteoarthritis of the feet (Tr. 287, 319); a diagnosis of rheumatoid arthritis (Tr. 319); a herniated disc with nerve root compression causing right leg numbness and pain (Tr. 332, 365); radiculopathy (Tr. 327); and a decreased range of lumbar spine motion (Tr. 343-344). Plaintiff's allegations of constant level "six" back pain, need for narcotic pain medication, abnormal gait, and reports that she could "hardly walk" due to foot pain are wholly consistent with the objective studies and clinical observations (Tr. 342, 355, 410).

As to the second prong of 96-7p, the ALJ found that Plaintiff's ability to stand at a cash register for six hours twice a week and "other quite strenuous farm and home chores" undermined her disability claim (Tr. 25). However, Plaintiff testified that her only job helping her husband tend the farm was collecting chicken eggs (Tr. 68). Further, while Plaintiff reported that as of November, 2013, she worked to two six-hour shifts each week at a party store, she was required to leave her shift two hours early 25 percent of the time (Tr. 77). She reported that her husband did 75 percent of the work babysitting for their grandchildren and that on her four "bad" days each month, she stayed in her room all day (Tr.

---

The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

79). While Plaintiff's ability to engage in limited work activity and help babysit her grandchildren, with nothing more, would tend to undermine her allegations, the objective medical evidence amply supports her testimony that her activities were compromised by disability level limitation.

Plaintiff requests a remand for either further administrative proceedings or for an award of benefits. An award of benefits is appropriate "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v.HHS,* 17 F.3d 171, 176 (6th Cir. 1994). In this case, a remand for benefits prior to the resolution of the yet-to-be clarified factual issues would be premature. As such, the case will be remanded for further administrative proceedings consistent with the above analysis. In addition, the proceedings on remand will be conducted by a different ALJ. *See* fn. 3.

## CONCLUSION

For these reasons, Defendant's Motion for Summary Judgment [Docket #14] is DENIED and Plaintiff's Motion for Summary Judgment [Docket #12] is GRANTED to the extent that the case is remanded to the administrative level for further proceedings consistent with this opinion.

IT IS SO ORDERED.


s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: September 28, 2017

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was sent to parties of record on September 28, 2017, electronically and/or by U.S. mail.

<u>s/Carolyn M. Ciesla</u>
Case Manager to the
Honorable R. Steven Whalen